# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal No. 1:05cr00067 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **DANIEL BRICE CROUSE,** | ) | |
| Defendant | ) | By:  **PAMELA MEADE SARGENT** |
| | ) | **United States Magistrate Judge** |

*I. Background*

This case is before the court on the defendant's motion to suppress, (Docket Item No. 14), ("the Motion"). The Motion asserts that certain evidence seized and statements made by Crouse as a result of the execution of a state search warrant should be suppressed.[1] This matter is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a hearing on the Motion on January 17, 2006. At the hearing, the court granted leave for the parties to file additional written arguments and/or to provide additional evidence. Thereafter, a subsequent hearing was held on January 23, 2006, at which additional evidence was presented. The parties' arguments and evidence have been reviewed by the undersigned and the matter is ripe for decision. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

---

[1] I note that no statements were actually made by Crouse at the time of the search that are sought to be suppressed.

-1-

*II. Facts*

Crouse has been charged in a five-count indictment with attempting to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, knowingly and intentionally possessing pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(1) and 841(c)(2), creating a substantial risk of harm to human life while manufacturing methamphetamine, in violation of 21 U.S.C. § 858, knowingly possessing firearms in or affecting interstate or foreign commerce while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and knowingly using and carrying a firearm during and in relation to, and possessing in furtherance of, a federal drug trafficking crime, in violation of 18 U.S.C. § 924(c). The facts relevant to the Motion are undisputed. On August 8, 2005, D. Z. Waddle, ("Waddle"), a narcotics investigator with the Smyth County Sheriff's Office working with the Smyth County Drug Task Force, and April D. Morgan, ("Morgan"), an officer with the Marion Police Department, swore an affidavit in support of a request for a search warrant for Crouse's residence, his person, persons present at the residence, the curtilage of the residence and vehicles and structures located thereon before Virginia state magistrate Tamula H. Gillespie.[2] In the affidavit, Waddle and Morgan requested to search for documents relating to the transportation, ordering, purchasing and distribution of controlled substances, particularly, methamphetamine; items relating to domestic and foreign travel; items evidencing the obtaining, secreting, transfer and/or concealment

---

[2]The search warrant affidavit also noted that the residence was that of Crystal Patrick-Taylor and that her person also was to be searched. However, because the Motion currently before the court deals only with Crouse, there will be no further references to Patrick-Taylor in this Report and Recommendation.

of assets and/or expenditure of money; assets obtained as a result of dealings in controlled substances, particularly, methamphetamine; photographs, in particular, photographs of co-conspirators, of assets and/or of controlled substances, particularly, methamphetamine; videotapes and surveillance equipment used to facilitate the manufacture or distribution of methamphetamine; weapons, particularly firearms, used as protection for controlled substances and other related objects; methamphetamine and related drug paraphernalia; items or articles of personal property tending to show ownership, dominion or control of the premises; and chemicals, precursor chemicals, glassware, heating mantels, beakers, metal stands, formulas or other hazardous material and computers, work sheets and records. The affidavit also states:

>   The material facts constituting probable cause that the search should be made are:
> 
>   Within the past 72 hours a confidential informant has advised member(s) of the Smyth County Drug Task Force that there is methamphetamine being manufactured inside the residence located at 4996 Sugar Grove Highway, Sugar Grove VA. Confidential Informant has observed items used in the manufacture of methamphetamine. Confidential informant #2 has also provided information to the Marion Police Department that there is methamphetamine being manufactured in this same residence.

The affidavit further states:
>   I was advised of the facts set forth in this affidavit, in whole or in part, by an informer. This informer's credibility or the reliability of the information may be determined from the following facts:
>   Confidential Informant #1 has provided information to members of the Smyth County Drug Task Force which has been found to be creditable and true. CI #1 has also made controlled purchases for the Smyth County Drug Task Force which have been monitored and recorded.

> Confidential Informant #2 has provided information to Marion Police Department officer which has been found to be creditable and true. Both confidential informants have been found to be creditable and reliable.

While the affidavit is signed by magistrate Gillespie, her signature simply affirms that the affidavit was subscribed and sworn to before her at 11:40 a.m., August 8, 2005. Nowhere on the face of the affidavit does it state that magistrate Gillespie made a finding of probable cause for the issuance of the warrant.

Ten minutes later, magistrate Gillespie issued a search warrant for Crouse's residence and his person, persons present at his residence, the curtilage of the residence and vehicles and structures thereon. The warrant states:

> This SEARCH WARRANT is issued in relation to an offense substantially described as follows:
> Possession/Distribution and/or Manufacture of Methamphetamine a schedule II controlled substance and/or marijuana.
> I, the undersigned, have found probable cause to believe that the property or person constitutes evidence of the crime identified herein or tends to show that the person(s) named or described herein has committed or is committing a crime, and further that the search should be made, based on the statements in the attached affidavit....

The warrant is signed by magistrate Gillespie.

Officers executed this warrant later that evening and found, among other things, one rifle with a magazine and ammunition, a red and silver tube with residue, a 32-ounce half-full can of acetone, a plastic bottle with one pint of iodine, a gallon of Toluene, a Tupperware container with red phosphorus, one digital scale, smoking devices, one half-full five-pound bag of rock salt, a marijuana plant, one 20-gauge

-4-

shotgun and rolling papers. Both Waddle and Morgan participated in the search.

### III. Analysis

Through the Motion, his brief in support of the Motion and arguments presented at both hearings, Crouse asserts that the evidence seized in the search should be suppressed because the affidavit did not state probable cause to support the issuance of the warrant.

It is well-settled that "[s]earch warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) (quoting *United States v. Harris*, 403 U.S. 573, 577 (1971)). The Supreme Court has described the "probable cause" required to authorize a search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Also, probable cause may be established through hearsay information from a reliable informant. *See United States v. Ventresca,* 380 U.S. 102, 108-09 (1965); *Draper v. United States*, 358 U.S. 307, 312-13 (1959). Furthermore, on review, a finding of probable cause is to be given "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

In *Gates* the Supreme Court adopted a "totality-of-the-circumstances" test to determine whether probable cause supported the issuance of a search warrant. *See* 462 U.S. at 238. The Supreme Court also noted that, under this analysis, two factors were instrumental in determining whether hearsay information provided by an informant

-5-

amounted to probable cause for a search. Those two factors are the informant's "veracity" or "reliability" and his or her "basis of knowledge." *Gates*, 462 U.S. at 238. The Supreme Court in *Gates* also recognized, however, that "conclusory" statements from reliable informants were not sufficient to establish probable cause. *Gates*, 462 U.S. at 239. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. The Supreme Court in *Gates* affirmed its holding in *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), that an affidavit must contain some of the underlying facts and circumstances from which the informant concluded that contraband was present in the identified location to be sufficient to establish probable cause. *See Gates*, 462 U.S. at 239.

In this case, the affidavit on its face stated that Confidential Informant #1, ("CI #1"), had provided information to members of the Smyth County Drug Task Force which had been found to be creditable and true. It further stated that CI #1 had proven reliable in the past in that he/she had made controlled purchases for the Smyth County Drug Task Force which had been monitored and recorded.[3] Crouse argues that this information was insufficient to allow magistrate Gillespie to find that CI #1 was, in fact, credible and reliable, thereby also making his/her statements insufficient to rise to the level of probable cause for the issuance of the search warrant. In response, the government argues that, while the affidavit on its face might not contain sufficient information for magistrate Gillespie to have reached this conclusion, Waddle and Morgan provided sworn, but unrecorded, oral statements to magistrate Gillespie which,

---

[3]Waddle subsequently testified that CI #1 had participated in only one such controlled drug buy.

in addition to the information contained in the affidavit, constituted sufficient evidence to establish the credibility and reliability of CI #1 and, therefore, further established probable cause for the issuance of the search warrant. Directing the court's attention to Federal Rule of Criminal Procedure 41, which governs search warrants obtained by federal law enforcement officers, Crouse contends that it would be a violation of his constitutional rights under the Fourth Amendment to allow this court to consider evidence outside of the four corners of the affidavit in determining whether the search warrant is supported by probable cause. Thus, the first issue in this case is whether evidence seized pursuant to a state search warrant must be suppressed in a federal prosecution because the affidavit supporting the warrant was supplemented with sworn, unrecorded oral testimony. For the following reasons, I find that it need not be suppressed on this basis alone.

Under Federal Rule of Criminal Procedure 41(d)(2)(C), "[t]estimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit." However, Rule 41 applies only to federal search warrants involving a "federal law enforcement officer." FED. R. CRIM. P. 41(a); *see also United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) (citing *United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992)). Here, there was no federal officer involved in seeking the issuance of the search warrant. Instead local narcotics officers requested and received the warrant from a state magistrate. Thus, the procedural requirements of Rule 41(d)(2)(C) simply to do not apply to this case. Instead, it is the Fourth Amendment that governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution. *See Clyburn*, 24 F.3d at 616. In fact, it is well-settled that the

proper standard for evaluating illegal search and seizure claims in federal courts is "whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir. 1993) (quoting *United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992); *see also United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994); *United States v. Mitchell*, 783 F.2d 971, 973-74 (10th Cir. 1986).

The Warrant Clause of the Fourth Amendment requires that warrants 1) be issued by a neutral and detached magistrate; 2) contain a "particular [] descri[ption of] the place to be searched, and the person or things to be seized[;] and 3) be based "upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV; *see Dalia v. United States*, 441 U.S. 238, 255 (1979). Here, Crouse argues that magistrate Gillespie committed constitutional error by relying, at least in part, on sworn, unrecorded oral testimony in making her probable cause determination. I disagree. The Fourth Circuit has held that the Fourth Amendment does not require that the basis for probable cause be established in a written affidavit, but that it merely requires that the information provided the issuing magistrate be supported by "Oath or affirmation." *See Clyburn*, 24 F.3d at 617 (citing U.S. CONST. amend IV). I further note that the Fourth Amendment does not "require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." *See Clyburn*, 24 F.3d at 617 (quoting *Shields*, 978 F.2d at 946). Therefore, as the Fourth Circuit held in *Clyburn*, "magistrates may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings." 24 F.3d at 617. That being the case, I find that Crouse's argument that the search warrant was not supported by probable cause merely because the magistrate relied

-8-

upon sworn, but unrecorded, oral testimony, in addition to the affidavit itself, is without merit. However, such a finding does not necessarily lead to the conclusion that the search warrant was, in fact, supported by probable cause. Instead, I must next determine whether the affidavit and the sworn oral statements made by Waddle and Morgan, when considered in combination, constituted probable cause for magistrate Gillespie's issuance of the search warrant. For the following reasons, I find that they did not.

At the January 23, 2006, hearing on the Motion, Waddle testified that he kept a notebook outlining information that he gathered from confidential informants and that he thereafter referred to when presenting information to the magistrate upon seeking a search warrant. Waddle testified that he received a call from CI #1 at 9:30 p.m. on August 7, 2005, informing him that there was a methamphetamine lab located at Crouse's residence. Waddle further testified that CI #1 informed him that he/she had personally observed items at Crouse's residence used to cook methamphetamine, including Toluene, red phosphorus and iodine. CI #1 stated that he/she had seen these items the previous night. CI #1 informed Waddle that such items used to manufacture methamphetamine could be found in a potato bin, in cabinets under the kitchen sink and in the basement. CI #1 then told Waddle that there was going to be a methamphetamine cook that week, that there was a marijuana plant located on the stereo and that the door handles to the residence might be wired to produce an electric shock. Based on this information, Waddle testified that certain members of the investigative team secured aerial photographs of Crouse's residence from the 911 database and drove by to confirm the address and description of the property given to them by CI #1 and to observe the residence. Waddle testified that these officers, of

-9-

Case 1:05-cr-00067-JCT-PMS   Document 25   Filed 01/26/06   Page 9 of 19   Pageid#: 70

whom he was not one, observed the residence and the vehicles located there and ran checks on the license plates of those vehicles. Thereafter, Waddle testified that he and Morgan went to magistrate Gillespie with the affidavit for the search warrant. Waddle further testified that this information concerning the drive by of Crouse's residence was not given to magistrate Gillespie.

Waddle testified that information from CI #1 had been used on at least three separate occasions in the past, including one controlled drug buy that was monitored and recorded by law enforcement. However, he testified that no arrests had been made and no convictions secured based on any of the information previously provided by CI #1 at the time that he and Morgan presented the affidavit to the magistrate. However, Waddle noted that, as a result of this controlled buy, a case was currently pending before a grand jury. Waddle further testified that CI #1 had provided information beginning in August 2004 that had led to the recovery of stolen property. Waddle testified that it was Morgan, not he, who gathered information relating to Confidential Informant #2, ("CI #2"). He testified that he recollected that CI #2 provided information corroborating CI #1's statements that methamphetamine was being manufactured in Crouse's residence and that the door handles to the residence were electrically wired.

Morgan testified that CI #2 had worked previously with the Marion Police Department and that the information that he/she provided had been found to be credible and reliable. Upon further questioning, Waddle testified that Sargeant Conklin, with the Marion Police Department, had merely informed her that CI #2 was credible and reliable. However, Morgan testified that Sargeant Conklin did not explain to her why

-10-

CI #2 had been deemed reliable and credible. In fact, Morgan testified that she never personally spoke with CI #2. Morgan testified that, according to Sargeant Conklin, CI #2 had stated that there had been manufacturing of methamphetamine inside Crouse's residence. However, Morgan was unable to testify whether CI #2 had any basis of personal knowledge for such a statement because, again, upon further questioning, Morgan testified that Sargeant Conklin had merely informed her that CI #2 had stated that there was methamphetamine being manufactured inside of Crouse's residence without relaying any information to her that CI #2 had any personal knowledge of this manufacturing of methamphetamine.

Morgan testified that she was one of the officers who participated in the drive by of Crouse's residence and that the residence was just as described by CI #1. Specifically, it was a two-story house along Highway 16 with an outbuilding in the back, a horse trailer and a basement. She stated that the officers parked across the road from Crouse's residence and attempted to take digital photographs of the residence. Morgan could not recollect whether this information regarding the drive by of Crouse's residence was shared with magistrate Gillespie.

The first issue that must be addressed is the credibility and reliability of the confidential informants. In *United States v. DeQuasie*, 373 F.3d 509, 518-19 (4th Cir. 2004) (quoting *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004)) (citation and internal quotation omitted), the Fourth Circuit held that, generally, when an effort is made to establish probable cause for the issuance of a search warrant based on hearsay from an informant, "it is necessary to consider all the circumstances set forth in the affidavit, including the veracity and basis of knowledge or persons supplying hearsay

-11-

information. The degree to which an informant's story is corroborated may also be an important factor." However, there is no set requirement that all tips from an informant "be corroborated by subsequent police investigation in order to be considered credible" for purposes of determining the existence of probable cause to support a search warrant. *DeQuasie*, 373 F.3d at 519 (quoting *United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997)). However, under the totality of the circumstances analysis, corroboration by details of an informant's tip by independent police work is of significant value. *See Gates*, 462 U.S. at 241-42. Whether subsequent corroboration of an informant's tips is necessary to support a finding of probable cause necessary for the issuance of a search warrant "must be determined in the light of the totality of the circumstances presented by the particular set of facts." *DeQuasie*, 373 F.3d at 519 (quoting *Blount*, 123 F.3d at 836)).

Turning first to the reliability, credibility and basis of knowledge of CI #2, it is clear from the evidence presented that sufficient information was not presented to the magistrate to support a finding that CI #2 was credible and reliable or that he/she had any personal knowledge that methamphetamine was being manufactured at Crouse's residence. Thus, it also could not provide the basis for magistrate Gillespie's determination of probable cause to support the issuance of the search warrant. As discussed above, the affidavit merely states that CI #2 had provided information to a Marion Police officer that had been found to be creditable and true. It further states that both confidential informants had been found creditable and reliable. However, Morgan testified at the January 23, 2006, hearing that she had no personal knowledge of the credibility or reliability of CI #2. Instead, Sargeant Conklin had merely told her that CI #2 had provided information that had been deemed creditable and reliable. He did

-12-

not explain to Morgan why he had made such a determination. Morgan then relayed this information to the magistrate in the affidavit. I find that these facts are sufficiently analogous to those presented to the Supreme Court in *Aguilar*. In *Aguilar*, 378 U.S. at 113-14, the Supreme Court held that the affidavit in question did not provide a sufficient basis for a finding of probable cause and the issuance of a search warrant where the affiant's conclusion that narcotics were being kept on the premises was based on information received from an informant and the affidavit did not even contain an affirmative allegation that the informant spoke with personal knowledge. Such is the case here. There is no allegation in the affidavit, nor was any provided orally to the magistrate, that the information that CI #2 provided to the Marion Police Department that there was methamphetamine being manufactured at Crouse's residence was based on CI #2's personal knowledge. Moreover, Morgan was unable to testify that she had any personal knowledge of CI #2's credibility or reliability or that Sargeant Conklin had informed her of why he deemed CI #2 credible and reliable. That being the case, I find that the information provided by CI #2 cannot form the basis for magistrate Gillespie's finding of probable cause to issue the search warrant.

Turning next to the reliability, credibility and basis of knowledge of CI #1, the affidavit states that CI #1 had provided information to the Smyth County Drug Task Force that had been found to be creditable and true. It further stated that CI #1 had made purchases for the Smyth County Drug Task Force that had been monitored and recorded.[4] As noted above, the affidavit further states that both confidential informants had been found to be creditable and reliable. At the January 23, 2006, hearing on the

---

[4] I again note that Waddle subsequently testified that CI #1 had participated in only one such controlled drug buy.

Motion, Waddle testified that CI #1 had provided law enforcement with information on three separate occasions in the past, but that none of that information had led to any arrests or convictions. He further testified that the controlled buy had not led to an arrest or conviction at the time that he and Morgan presented the affidavit to the magistrate, but that a case was currently pending before a grand jury as a result of that controlled buy. Waddle testified that information provided by CI #1 in the past had led to the recovery of stolen property.

Here, CI #1 provided information that methamphetamine was being manufactured at Crouse's residence, that he had personally observed items used to make methamphetamine the previous night, including Toluene, red phosphorus and iodine in Crouse's residence, he gave specific locations where items used to manufacture methamphetamine would be found, including a potato bin, in cabinets under the kitchen sink and in the basement, he said that there was a marijuana plant on the stereo, he stated that there was going to be a methamphetamine cook that week and he stated that the door handles to Crouse's residence might be wired to produce an electric shock. The search of Crouse's residence did, in fact, produce Toluene, red phosphorus and iodine. The search also yielded several other items commonly used in the manufacture of methamphetamine. Some of these items were located in the kitchen cabinets under the sink, in a potato bin and in the basement. A marijuana plant was found on the stereo in Crouse's residence. There has been no evidence produced as to whether the door handles to Crouse's residence were, in fact, wired to produce an electric shock. While CI #1 gave the officers some rather specific information, which ultimately turned out to be true, I nonetheless find that this is not sufficient to corroborate CI #1's statements and thereby support a finding of his/her credibility or

-14-

reliability for purposes of establishing probable cause for the issuance of the search warrant. Magistrate Gillespie could consider only the information presented to her in the affidavit or sworn to before her orally in making her determination of credibility and reliability of CI #1 and her subsequent probable cause determination. Thus, the specific information given by CI #1, which later turned out to be true, constituted nothing more at the time of the issuance of the search warrant than mere uncorroborated statements by a confidential informant. There was nothing before magistrate Gillespie at the time that she made her probable cause determination from which she could determine CI #1's credibility or reliability on this basis. That being said, magistrate Gillespie's finding regarding CI #1's credibility and reliability could only have been based on the statement that he/she had provided information in the past that had been found to be creditable and true. However, as discussed above, Waddle testified that the information provided by CI #1 in the past had not led to any arrests or convictions, but that the controlled buy in which he/she had participated had resulted in a case currently pending before a grand jury. Waddle further testified that information previously provided by CI #1 had led to the recovery of some stolen property. I find that such scant information regarding CI #1's credibility and reliability is simply insufficient to support a probable cause finding. Although there was testimony that the officers conducted a drive by of Crouse's residence and confirmed the location and description of Crouse's residence as provided by CI #1, this information apparently was not shared with magistrate Gillespie. Even had this information been presented to the magistrate, I find that it would not provide sufficient evidence of CI #1's credibility or reliability because the officers garnered no more information from this drive by than an ordinary citizen driving by Crouse's residence could have gained. The officers did not conduct any surveillance on Crouse's

-15-

residence to determine, for instance, whether there were individuals coming and going therefrom, as is common in the drug trade. Nor did they use surveillance to gather information on any vehicles and their respective owners who might have been frequenting Crouse's residence in an effort to determine whether such individuals might have been involved in drugs. Moreover, there is no evidence that the officers ever ran a criminal history check on Crouse. In fact, Waddle testified that he first became aware of Crouse only four or five months before CI #1 contacted him in August 2005.

For all of these reasons, I find that, given the totality of the circumstances, and specifically considering the credibility and reliability of the confidential informants, probable cause does not support the issuance of the search warrant for Crouse's residence, his person, persons present at the residence, the curtilage of the residence and the vehicles and structures located thereon. However, the court's inquiry does not end here. I must next decide whether the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 915, 918-20 (1984), applies under the circumstances of this case. In *Leon*, the Court held that the exclusionary rule does not bar admission of evidence gained by officers acting in objectively reasonable reliance on a warrant later determined to be invalid. *See* 467 U.S. at 913. The Supreme Court in *Leon* outlined the following four situations in which an officer's reliance on such a warrant would not be reasonable: 1) when the warrant is based on an affidavit containing knowing or reckless falsity; 2) when the magistrate has simply acted as a rubber stamp for the police; 3) when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; and 4) when the warrant is so facially deficient that an officer could not reasonably rely on it. *See Leon*,

468 U.S. at 923. I first note that there is no allegation that the warrant is based on an affidavit containing knowing or reckless falsity. Crouse asserts that magistrate Gillespie acted as a "rubber stamp" for the investigators because the affidavit was so lacking in information relating to the informants' credibility and reliability. While the affidavit, on its face, may certainly be described as "bare bones," when considered in combination with the sworn, but unrecorded, oral testimony presented to the magistrate, I find that it is not. As discussed above, CI #1 presented very specific information to the investigators, most of which ultimately proved true. Moreover, Waddle and Morgan testified that, although they had been required to include additional information in their affidavits in the past, they were not asked to do so on this occasion and that magistrate Gillespie asked them various questions before deciding that probable cause supported the issuance of the search warrant. Both Waddle and Morgan testified that this was a common practice for magistrate Gillespie to further question them in order to determine whether probable cause had been established and that is why Waddle always kept notes on what various confidential informants had relayed to him. Thus, I find that magistrate Gillespie did not act merely as a "rubber stamp" for the investigators and that Waddle and Morgan acted in objectively reasonable reliance on the warrant. I note that the other two instances in which the investigators' reliance on the warrant would be unreasonable do not apply here. As previously discussed, while the affidavit alone would not provide the magistrate with a substantial basis for determining the existence of probable cause, the affidavit, in combination with the investigators' sworn oral, but unrecorded, testimony would. Also, there is no allegation that the warrant was facially deficient.

For these reasons, I find that, although the search warrant was not supported by

sufficient probable cause, the good faith exception set forth in *Leon* should apply. Therefore, I will recommend that the court deny the Motion to suppress.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The affidavit, in combination with the sworn oral, but unrecorded, testimony at issue in this case did not state facts sufficient to demonstrate probable cause to support the issuance of the search warrant;
2. The issuance of the warrant violated the Fourth Amendment of the United States Constitution in that it was unreasonable because it was not issued upon a proper finding of probable cause; and
3. The good-faith exception to the exclusionary rule prevents the suppression of the evidence seized in the search because the investigators' reliance on the warrant was not unreasonable.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the court deny the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within ten days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James C. Turk, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 26th day of January, 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE